JOS. GUIDONE'S FOOD PALACE, INC. *v.* GARDNER & GUIDONE, INC. ET AL.

[No. 372A120. Filed August 9, 1972.]

*Alan H. Lobley, Ice, Miller, Donadio & Ryan,* of Indianapolis, for appellant.

*Forrest D. Rau,* of Indianapolis, for appellee.

ROBERTSON, P.J.—Plaintiff-appellee (Palace) and defendant-appellant (Scot-Lad) operated a drug store and supermarket, respectively, in close proximity at the same shopping center.[1] Lease provisions stated that Palace would not sell "food or related grocery or meat products" and that Scot-Lad could sell health and beauty aids but not permit the sale of

---

1. Jos. Guidone's Food Palace, Inc., a closely held corporation was purchased in its entirety by Scot-Lad Foods, prior to the commencement of this litigation, hence, to avoid confusion, the defendant-appellant shall be referred to as Scot-Lad. Joseph Guidone also was a stockowner and officer of Gardner & Guidone, Inc., the corporation which owned and managed the shopping center. That corporation is not involved in this appeal.

drugs and cosmetics. Both parties were aware of these provisions.

Scot-Lad commenced selling drug and cosmetics with Palace successfully seeking a temporary injunction to halt Scot-Lad's sales. Scot-Lad appealed the granting of the temporary injunction. See: *Guidone's Food Palace, Inc.* v. *Palace Pharmacy, Inc.* (1969), 252 Ind. 400, 248 N. E. 2d 354. The Supreme Court affirmed holding that Palace made a prima facie showing sufficient to justify the granting of the temporary injunction.

Upon remand for a trial on the permanent injunction, Scot-Lad filed an answer and counterclaim asking Palace's relief be denied, based upon the doctrine of unclean hands, or in the alternative, asking that Palace be enjoined from selling food or grocery related items.

After trial the court made the injunction permanent and denied all relief sought by Scot-Lad.

We are of the opinion that the following specification of error, alleging the decision is contrary to law, is well taken:

"The uncontested evidence is that the plaintiff (Palace) was carrying for sale in its store candy, ice cream, popcorn, potato chips, nuts, soft drinks, diet foods, dog foods, toilet paper, paper napkins, paper plates, furniture polish and shoe polish. In light of this uncontradicted evidence, the Court's findings for the plaintiff on its complaint and on the defendant's counterclaim ignores the plaintiff's obligations under the lease the plaintiff is attempting to enforce."

Primary authority utilized by Scot-Lad for sustaining their position is *Ilo Oil Co.* v. *Indiana Nat. Gas, etc., Co.* (1910), 174 Ind. 635, 92 N. E. 1, and the numerous cases cited therein.

"As appelant was guilty, although in a lesser degree, of the same acts charged against appellee, the court will leave the parties where it finds them, for the reason that he who seeks equity must do equity, and must come into court with clean hands." 92 N. E. 1, at pp. 1 and 2.

Palace replies to Scot-Lad's position by pointing out that there is no evidence of any damage sustained by Scot-Lad as a result of Palace's selling of food and grocery related items.

We are of the opinion that the total lack of evidence showing a monetary loss by Scot-Lad is sufficient to defeat any alleged error predicated on the denial of the counterclaim, insofar as liquidated damages would be applicable. However, we are of the further opinion that damage may be presumed from the harm of Palace's sales of food and grocery related items thereby allowing the doctrine of unclean hands to come into play. See: *American Fletcher Nat. Bank & Trust Co.* v. *Flick* (1969), 146 Ind. App. 122, 252 N. E. 2d 839, and authorities cited therein.

Palace raises the further question of the existence of a waiver of the lease provision on the part of Scot-Lad. Guidone, Scot-Lad's predecessor, had knowledge of Palace's sales of grocery related items and made no objection. On the other hand, Palace failed to agree or object to Scot-Lad's request for permission to sell drug related items within what may be termed a reasonable time. If waiver did in fact exist, it existed on both sides.

Under the result reached it is unnecessary to discuss other errors presented.

This cause is reversed and remanded for the purpose of dissolving the permanent restraining order.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported in 285 N. E. 2d 834.