GEORGE S. CRESSY *v.* SHANNON CONTINENTAL CORPORATION, RICHARD D. RUSSELL, AS PRESIDENT, VICTOR ARKO, AS SECRETARY OF SHANNON CONTINENTAL CORPORATION, J. AND ALICE RUSSELL

*[No. 3-1275A269. Filed August 8, 1978. Rehearing denied September 14, 1978. Transfer denied January 2, 1979.]*

*Thomas P. Loughlin, William T. Means*, of Mishawaka, for appellant.

*Matthews-Petsche and Associates*, of South Bend, *Bayliff, Harrigan, Cord & Maugans*, of Kokomo, for appellees.

GARRARD, P.J. — This appeal concerns a dispute between the two principal shareholders of a closely held corporation, Shannon Continental Corporation (Shannon). Essentially Cressy and Russell each challenged the validity of certain stock transactions involving the other. Considered separately these transactions would have altered control of the corporation. After consolidation and trial the court determined that the mutual intent of Cressy and Russell in forming Shannon had been one of equal "partnership." It then fashioned equitable relief to restore that relationship. From its judgment Cressy, alone, appeals.

### I. Factual Background

Cressy was a realtor. In 1969 it came to his attention that an office building located in downtown South Bend could be purchased at a reasonable price. It was his opinion that the property could be turned into a profitable rental location. He negotiated with the owner of the building, making clear his intention to be a participant in the purchase. He also had prepared at his personal expense architectural drawings and renderings to demonstrate his ideas that, if remodeled, the building would be attractive to tenants.

Cressy approached several prospects with these drawings in an effort

to accomplish his goal. Among these was Russell, whom he knew socially. They reached agreement whereby they would be "fifty-fifty partners" in owning the building and would form a corporation to carry out their purpose.[1] On September 16, 1969, in pursuit of their plan the property was sold to Russell on land contract for $150,000. Russell made the required down payment of $10,000. However, one half this sum represented reimbursement for Cressy's contributions in putting the transaction together.

Shannon was formed in October and the contract was then assigned to it. Of the 1,000 shares of common stock authorized by the corporate articles, Cressy and Russell each subscribed to and received 425 shares.[2]

However, the affairs of the corporation did not prosper. Nor did relations between Cressy and Russell remain cordial.

On October 8, 1970 a directors' meeting was held with Cressy and Russell present. A resolution was adopted authorizing the president (Russell) to borrow in the corporate name "at least the sum of $3,000" for "additional capital" and further authorizing him to sell additional shares of authorized stock "if such money is not readily available."

Cressy admitted knowing a sale of stock could occur as a result of this resolution but stated he was unaware of how much or when the stock would be sold. In fact, soon after the meeting Russell sold thirty shares at a price of $100 per share to his parents, J. and Alice Russell. Payment was received in full by the corporation sometime between October 15th and October 26th. Cressy testified that he did not know Russell contemplated a sale to his parents and that he did not discover the identity of the purchasers until after the sale was completed. Russell testified that the $3,000 was essential to meet operating expenses and that securing the money helped avoid the threat of bankruptcy.

---

1. Various factual matters were, of course, disputed. Our recital resolves those conflicts in favor of the judgment.

2. The remaining shares were issued over the next four years so that when litigation commenced shares were outstanding in the names of the following: Solomon Lim—25; Victor Arko—20; Larry DeFries—75; J. and Alice Russell—30. The shares issued to the first three named individuals were issued in connection with professional services performed for the corporation.

Toward the end of 1970 Shannon secured the Indiana Employment Security Division as a tenant. On the basis of this lease it secured a loan of $105,000 for remodeling the building. Cressy and Russell, together with their wives, were personal guarantors of this loan. In addition each, at times, made personal loans to Shannon to enable it to meet its financial obligations. While Russell's contributions in this respect were substantially greater than Cressy's, at the time of suit the corporation owed equal amounts to each.

Finally, it appears that Larry DeFries acted as treasurer for the corporation and did its accounting work. In lieu of direct compensation he was given a stock option and by April 1973, he had been issued 75 shares of Shannon stock. On May 21, 1973 DeFries sold and assigned his shares to Cressy for $6,000. Cressy made no attempt to notify Russell or the other shareholders that this sale was in prospect. When he was unsuccessful in attempting to secure the transfer of these shares into his name on the corporate records, the litigation commenced.

In one suit Cressy sought to compel transfer of the DeFries shares into his name. In another, he sought to set aside the sale of the 30 shares issued to J. and Alice Russell. Counterclaims asserted that Cressy's shares were issued without consideration; that DeFries' shares were issued without consideration; and, that Cressy's purchase of the DeFries shares violated an agreement between DeFries and Russell.

The cases were consolidated and tried to the court sitting without a jury. No special findings were requested. Accordingly under our practice the decision is to be treated as made upon a general finding and the judgment controls. Indiana Rules of Procedure, Trial Rule 52(D); *Arnett v. Helvie* (1971), 148 Ind. App. 476, 267 N.E. 2d 864. Two effects result. Concerning issues of fact challenged on appeal the standard of review is that applicable to jury verdicts.[3] In addition, the judgment will be affirmed if it is correct on any theory of law applicable to the evidence. *See In re. Estate of Fanning* (1975), 263 Ind. 414, 333 N.E. 2d 80; *Notter v. Beasley* (1960), 240 Ind. 631, 166 N.E. 2d 643.

After hearing the evidence the court determined that Cressy and

---

3. Thus, the appropriate standard depends upon who bore the burden of proof at trial.

Russell had intended to be equal partners in Shannon and that the court should invoke its equity powers to effect that intent.[4]

It then amended the articles of incorporation to provide for two classes of stock, one as described in the articles of incorporation and the other to be identical except that it was to have no voting rights.[5] It then ordered the 30 shares held by J. and Alice Russell and the 75 shares assigned by DeFries to be non-voting shares of the second class.

## II. The Issues

Cressy challenges the ability of the court to recognize an "incorporated partnership," and its power to grant relief in the form provided by the order. He also asserts that the court's refusal to invalidate the sale to the Russells was contrary to the evidence.

We initially point out the court had equitable jurisdiction. TR. 2; *Ratliff v. Stretch* (1892), 130 Ind. 282, 30 N.E. 30. In addition, pursuant to TR. 54(C) the court was authorized to grant the relief to which a party proved himself entitled even though such relief was not demanded in the pleadings. *See also* Civil Code Study Commission Comments to TR. 2.

The imposition of such duties as the term "incorporated partnership" implies is a recognition that this form of business enterprise is a hybrid. While parties incorporate to obtain the benefits of limited liability, perpetual existence of business entity or tax considerations accruing to the corporate form, they often expect to act and to be treated as partners in their dealings among themselves.[6] When this intention is manifest and no harm results to outsiders thereby, there appears little reason to frustrate the parties' actual intent by strict adherence to the traditional norms of corporate law. *See* Conway, *The*

---

4. These determinations set forth in the court's opinion are properly considered on appeal. TR. 52(D); *Gavin v. Miller* (1944), 222 Ind. 459, 54 N.E. 2d 277.

5. The decree declared the amendment and ordered the Secretary of State to take appropriate action to reflect it.

6. We do not suggest the relationship arises *a fortiori* in a corporation involving few shareholders. Such parties may well intend to do business with the world and among themselves strictly in accord with the norms of general corporation law.

*New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures,* 30 Ford. L. Rev. 297, 309-311 (1962); Hornstein, *Judicial Tolerance of the Incorporated Partnership,* 18 Law & Cont. Problems 435 (1952).

As Judge, now Chief Justice, Burger stated in *Helms v. Duckworth* (D.C. Cir. 1957), 249 F. 2d 482, 486-487:

> "In an intimate business venture such as this, stockholders of a close corporation occupy a position similar to that of joint adventures and partners. While courts have sometimes declared stockholders 'do not bear toward each other that same relation of trust and confidence which prevails in partnerships,' this view ignores the practical realities of the organization and functioning of a small 'two man' corporation organized to carry on a small business enterprise in which the stockholders, directors and managers are the same persons. A distinguishing characteristic of such a corporation is the absence of a division between the stockholder-owners and the director-managers, for the former either personally manage and direct the business or so dominate the directors as to render the latter agents. Yet, the fiduciary capacity of directors and dominant or controlling stockholders is unquestioned. Pepper v. Litton, 1939, 308 U.S. 295, 306, 60 S. Ct. 238, 84 L. Ed. 281. We believe that the holders of a closely held stock in a corporation such as shown here bear a fiduciary duty to deal fairly, honestly, and openly with their fellow stockholders and to make disclosure of all essential information." (footnotes omitted)

In *Hartung v. Architects Hartung/Odle/Burke, Inc.* (1973), 157 Ind. App. 546, 301 N.E. 2d 240 Indiana recognized the principle of "incorporated partnership" and held that, independent of possible status as officers or directors, the shareholders of such a corporation owed to each other a fiduciary duty to deal fairly, honestly and openly.

Accordingly, as such finding was amply sustained by the evidence in the case before us, it was not contrary to law. Moreover, the evidence sustained the court's determination that Cressy and Russell intended equal ownership and control of the business. The "partnership" expectation of equality of shareholdings carried with it the duty on the part of each principal to disclose to the other

the availability of outstanding shares for sale to afford the opportunity to share in the purchase of such stock. *See* Brudney, *Fiduciary Ideology in Transactions Affecting Corporate Control,* 65 Mich. L. Rev. 259, 289-294 (1966). The court was justified in determining that Cressy and Russell each breached this duty.

However, it is argued that in any event the court erred in amending the articles to provide for a new class of non-voting stock. With this contention we agree.

Ordinarily, equity acts *in personam.* Moreover, it is urged that the legislature has provided the exclusive means for amending articles of incorporation, and they do not include judicial amendment such as the court declared.

Our research has disclosed but two cases wherein trial courts, through their equity powers, have ordered amendments to articles of incorporation in granting relief for a party. In both, relying chiefly on the grounds of legislative preemption, the courts held that such relief was beyond the trial court's power. *Disabled American Veterans v. Hendrixson* (1959), 9 Ut. 2d 152, 340 P. 2d 416; *Casper v. Kalt-Zimmers Mfg. Co.* (1914), 159 Wis. 517, 149 N.W. 754. Thus, unless the legislature has made a specific grant of power to courts allowing such amendments, that power has been denied. W. Fletcher, *Cyclopedia of Corporations* § 3716 (1964 Rev.). Our statutes make no provision for such action by courts. *See* IC 23-1-4-1 *et seq.*; IC 23-1-2-6(a). Accordingly, we hold that the trial court's order in the present case was error.

One further point must be considered.

Cressy asserts error in the court's failure to invalidate the shares issued to J. and Alice Russell. This claim is based upon an asserted failure to properly call the special directors' meeting at which the sale was authorized, and in the alleged violation of Cressy's preemptive purchase rights under the corporate articles.

The shares in question were authorized and capable of being sold by the corporation. Cressy was present at the meeting. From the evidence the court could reasonably conclude that he knew the shares would be offered to someone and that he raised no objection. The court could thus properly conclude that Cressy was precluded from asserting either a

claim to preemptive rights or the technical deficiency in the meeting. *See Jones v. Milton & Rushville Turnpike Co.* (1856), 7 Ind. 547; 18 Am. Jur. 2d, *Corporations* § 251.

Since Russells assigned no cross errors, we need not consider whether the court could properly deny them voting rights.

We therefore conclude that the court did not commit error in finding an "incorporated partnership." However, while it might have entered an order against Cressy and Russell requiring them to exercise their voting rights consistent with their obligations, or might have ordered the sale of an "equalizing" number of shares, it exceeded its power when it declared the articles amended.

The judgment is therefore reversed and remanded for further proceedings consistent with this opinion.

Hoffman, J. concurs; Lowdermilk, J. (sitting by designation) concurs.

NOTE — Reported at 378 N.E. 2d 941.