UNISHOPS, INC., a Foreign Corporation, Unishops M & B of Indiana, Inc., an Indiana Corporation, Tradeway of Highland, Inc., an Indiana Corporation, Central Textile of Indiana, Inc., an Indiana Corporation, Central Textile, Inc., a New Jersey Corporation, Herbert I. Wexler, John Kuehn, Bernard Major and Walter Craig, Individually, Appellants-Defendants,

v.

MAY'S FAMILY CENTERS, INC., an Indiana Corporation, Appellee-Plaintiff.

No. 3-478A89.

Court of Appeals of Indiana,
Third District.

Jan. 23, 1980.

Rehearing Denied Feb. 27, 1980.

Max Cohen, David Capp, Cohen & Thiros, Merrillville, for Unishops, Inc., Unishops M & B of Indiana, Inc., Central Textile of Indiana, Inc., Central Textile, Inc., Herbert I. Wexler and John Kuehn.

Robert Peters, Lucas, Clifford & Holcomb, Merrillville, for Tradeway of Highland, Inc., Bernard Major and Walter Craig.

Arnold Krevitz, Merrillville, Bernard Wiczer, Chicago, Ill., for appellee-plaintiff.

STATON, Judge.

May's Family Centers, Inc. (May's) filed an action against Unishops, Inc., some of its corporate officers and three of its wholly owned subsidiaries (Unishops) seeking to enjoin them from entering into several license agreements with Tradeway, a competing retail store. May's claimed that Unishops, its licensee, was in violation of a restrictive covenant in their contract which licensed Unishops as the operator of certain departments in the May's stores. The court entered a judgment granting May's an injunction against Unishops on December 8, 1977 and then entered an Amended Judgment for Injunction on December 27, 1977. At that time, it reiterated the terms of the original judgment and, additionally, ordered Unishops to remove all of their men's and boy's and domestics merchandise from the competing Tradeway store within 45 days.

On appeal, Unishops raises five issues for our review:

(1) Was there sufficient evidence to support the enforcement of this restrictive covenant?

(2) Was there sufficient evidence to support the trial court's finding that May's lacked an adequate legal remedy and that it would suffer irreparable harm without injunctive relief?

(3) Was May's refusal to consent to Unishops' proposed licensing agreement with a competitor unreasonable in light of their contract?

(4) Did the trial court err when it failed to apply the equitable doctrine of "unclean hands?"

(5) Was the relief granted by the trial court beyond the scope of the pleadings and the evidence adduced at trial?

We affirm.

The facts relevant to our disposition of the case indicate that Unishops, a national corporation, contracted with May's owner and operator of six retail stores in Indiana to operate certain departments in the May's stores. The two license agreements, which are in issue, have practically identical terms. One of the licenses grants Unishops the right to operate the men's and boy's divisions in all of the May's stores. The other grants them the right to operate its domestics division. Both license agreements contain a restrictive covenant which prohibits Unishops from engaging in a similar business within a five-mile radius of any of the May's stores. The covenant provides:

"3. Without Licensor's prior written consent, which consent shall not unreasonably be withheld, Licensee agrees that during the life of this License Agreement it will not engage either directly or indirectly within a radius of five (5) miles of any of Licensor's Stores, in a business similar to or the operation of a department similar to that conducted by the Licensee in such Store. A violation of this provision shall permit the Licensor to cancel this License Agreement with respect to all stores, upon sixty (60) days prior written notice to the Licensee, pro-

vided Licensee does not correct such violation within said sixty (60) day period."

In the fall of 1977, Unishops entered into three license agreements with Tradeway whereby they would operate the men's and boy's, domestics and shoe departments in a new Tradeway store. This store was located in the middle of the May's trading area, 4.42 miles from one May's store and 4.43 miles from another. Before Unishops had signed the contract with Tradeway or even requested May's consent to do so, they were informed that May's consent to such a venture would not be forthcoming. On November 9, 1977, May's filed an action seeking to enjoin Unishops from implementing the license agreements with Tradeway in violation of their restrictive covenant. The injunction was granted and is the subject of this appeal.

I.

Reasonableness

■ Unishops contend that there is insufficient evidence to support the enforcement of the restrictive covenant. A lessor's extraction, from a lessee, of a covenant not to engage in certain commercial activities in which the lessor is already engaged, is permissible. It, however, creates a limited geographic monopoly and, as such, is a restraint of trade. *Howard D. Johnson Co. v. Parkside Develop. Corp.* (1976), Ind.App., 348 N.E.2d 656. Nonetheless, such a covenant will be enforced and injunctive relief will be extended to prevent the breach if the restraint is reasonable with respect to the parties involved and the public interest.[1] *Welcome Wagon v. Haschert* (1955), 125 Ind.App. 503, 127 N.E.2d 103; *Grand Union Tea Company v. Walker* (1935), 208 Ind. 245, 195 N.E. 277. This question of reason-

ableness is one of law for the court, rather. than for the jury, and it is to be determined by looking at all the facts and circumstances surrounding each case. *Frederick v. Professional Bldg. Main. Indus. Inc.* (1976), Ind. App., 344 N.E.2d 299.

■ Our Supreme Court in *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235 sets out a three-pronged test for the determination of the reasonableness of a restrictive covenant. In following its guidelines, we will look to: (a) the question of whether the promise is broader than necessary for the protection of the covenantee (May's) in some legitimate interest, (b) the effect of the promise upon the covenantor (Unishops), and (c) the effect upon the public interest.

■ After examining whether this covenant was necessary for May's protection in the pursuit of some legitimate interest, we must answer affirmatively. In addition to violating the five-mile radius contract term, Unishops' arrangement with Tradeway put them in the position of being privy to May's "inside" operation, while working in a competitor's store. One of the May's officers testified of his fear that Unishops might potentially disclose May's confidential information to Tradeway. Because Unishops were working within the May's stores, they were in a position to observe and then possibly disclose May's advertising programs, "loss leaders," marketing policies, purchasing and pricing strategies, security systems, customer lists or departmental sales volumes to Tradeway. In fact, the evidence at trial showed a striking similarity between May's advertising, which had been prepared six months in advance, and the initial advertising of the opening Tradeway store. We conclude that the restrictive covenant

1. The proper standard of review for injunctive relief which has, as its basis, a breach of a restrictive covenant, is one of "reasonableness." The Court's traditional "sufficiency of the evidence" review is encompassed by this reasonableness standard. However, in a situation where a preliminary injunction had been issued and there was no showing that the preliminary injunction hearing was consolidated with a trial on the merits, we would not ad-

dress the merits. Instead, we would limit our review to the question of whether the trial court's action constituted a clear abuse of discretion. *See Peters v. Davidson, Inc.* (1977), Ind.App., 359 N.E.2d 556. In the case at hand, the hearing for the preliminary injunction was consolidated with the trial on the merits, pursuant to Ind.Rules of Procedure, Trial Rule 65(A)(2). Hence, a "clear abuse of discretion" review is improper.

was reasonably drawn to protect the covenantee in the operation of its business.

■ Next, we must look to the effect of the promise upon the covenantor (Unishops). Unishops promised not to operate, within a five-mile radius of any May's stores, a department similar to those which they operated for May's. They did not promise that they would never operate any men's and boy's or domestics departments in competition with May's or even that they would not operate any similar departments concurrently with their May's operations. They merely promised not to manage any competing departments in a store located within a five-mile radius of a May's store. This situation is somewhat analogous to one in which an employee has signed a contract, which includes a restrictive covenant not to compete with his employer. The Court in *Donahue, supra,* at 241 summarized the applicability of a restrictive covenant in this situation quite aptly in quoting from *Roy v. Bolduc* (1943), 140 Me. 103, 34 A.2d 479, 480:

"' * * * (W)hile an employer, under a proper restrictive agreement, can prevent a former employee from using his trade or business secrets, and other confidential knowledge gained in the course of the employment, and from enticing away old customers, he has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment. Public policy prohibits such undue restrictions upon an employee's liberty of action in his trade or calling. * * * ' "

Like our hypothetical employee, Unishops were not precluded from "exercising the skill and general knowledge" they had acquired. They were neither asked to give up their license agreements with other stores in the area nor were they precluded from doing business with May's. They were only to refrain from operating any similar departments in the Tradeway store located within a five-mile radius of the two May's stores. We conclude that this was not unreasonable.

■ We must finally view the effect of this covenant upon the public interest. It is true that public policy will prohibit the enforcement of a covenant which places undue restrictions upon a covenantee's liberty of action in his business or trade. *Donahue, supra.* But such is not the case here. The public interest is not harmed by the enforcement of this covenant.

## II.

### Injury

■ Unishops next complaint that there was insufficient evidence to support the trial court's finding that May's lacked an adequate legal remedy and that it would suffer irreparable harm without injunctive relief. We disagree. In viewing the reasonableness of a restrictive covenant, we will look to all the facts and circumstances surrounding each case. *Frederick, supra.* Whether the remedy provided by the contract is legally adequate and whether May's would suffer irreparable harm without injunctive relief are questions which are more properly directed to a discussion of injunctions which do not have, as their basis, a breach of a restrictive covenant. Here, we are not dealing with such an injunction as one prohibiting the interference with right-of-way easements as in *Rees v. Panhandle Eastern Pipe Line Co.* (1978), Ind.App., 377 N.E.2d 640, or one enjoining strikes in connection with a labor dispute, as in *Elder v. City of Jeffersonville* (1975), 164 Ind.App. 422, 329 N.E.2d 654. Rather, the injunctive relief requested by May's was provided to prevent a breach of a restrictive covenant. *See Welcome Wagon, supra,* 127 N.E.2d 103 at 106. Nonetheless, we are persuaded that the issues raised by Unishops can be considered in light of making a determination as to the reasonableness of the restrictive covenant.

■ Unishops argue that their contract with May's contained an adequate legal remedy which precluded May's resort to

injunctive relief. They also contend that the following provision acts as a liquidated damages clause as well:

"A violation of this provision shall permit the Licensor to cancel this License Agreement with respect to all stores, upon sixty (60) days prior written notice to the Licensee, provided Licensee does not correct such violation within said sixty (60) day period."

The "remedy" and its resulting implications to May's suggested by this cancellation clause are inadequate at best. If, in response to Unishops' breach, May's were to exercise this option and terminate their relationship, it would clearly be the party that suffered. Not only would May's lose incalculable dollars and the hours it had expended in the development of its lengthy relationship with Unishops, but more importantly, May's would find it extremely difficult to rapidly obtain another licensee to replace Unishops. In order to be adequate, a legal remedy must be as "practicable, efficient, and adequate as that afforded by equity." *Fisher v. Carey* (1918), 67 Ind. App. 438, 442, 119 N.E. 376. This cancellation clause, clearly falls short of these requirements and, thereby, fails as an adequate legal remedy. We will not address Unishops' contention that this provision serves as a liquidated damages clause as it is a new argument on appeal. We will confine our review to those grounds of alleged error set forth in Unishops' motion to correct errors. *Haskett v. Haskett* (1975), 164 Ind.App. 105, 327 N.E.2d 612, 616.

Unishops also asks us to determine if there was sufficient evidence to support the trial court's finding that May's would suffer irreparable harm without injunctive relief. As noted earlier, this contention is one we will examine in light of the reasonableness of the restrictive covenant. Despite the fact that the Tradeway store was just opening for business during the trial, Unishops charge that May's failed to introduce any evidence of "relative economic impact" resulting from Unishops' involvement with Tradeway. Unishops complain that only conjectural evidence was offered by May's to show its injury. The fact that the injury, done by a breach of a restrictive covenant in a contract, cannot be measured in dollars and cents and compensated through an action at law, is a prime reason for enjoining its continuing breach. *Welcome Wagon, supra; Peters v. Davidson, Inc.* (1977), Ind.App., 359 N.E.2d 556, 561.

In *Welcome Wagon, supra,* an employer sought to enjoin a former employee from operating a similar business in a city where she had formerly been employed. The Court granted the injunction and said:

"In our opinion irreparable injury need not be shown where, as here, the services of the employee have been of such character that she gained knowledge of her employer's special and particular business methods and the very purpose of the breach is to capitalize upon the use of such methods for her own benefit. . . ." (Citations omitted.).

127 N.E.2d at 106. It appears that we have a somewhat similar situation here. As a May's licensee, Unishops are privy to many of May's inside policy decisions which affect the success or failure of its business. Concurrently, Unishops are beginning to operate identical departments (but for the shoe department) in a nearby Tradeway store. There was disputed evidence at trial that Unishops had capitalized upon their being a licensee for two competing stores at the same time by disclosing preplanned May's advertising to Tradeway. We conclude, in making a reasonableness determination, that the potential harm for May's is sufficiently great as to warrant the enforcement of the restrictive covenant.

### III.

### Consent

Unishops next contend that, according to the following provision:

"3. Without Licensor's prior written consent, which consent shall not be unreasonably be withheld, . . . ."

May's refusal to give consent to its proposed license agreements with Tradeway was unreasonable. Unishops focus upon the unreasonableness of May's refusal to

give consent in view of the fact that Unishops never had the opportunity to make a demand for consent before they were informed of May's refusal. Unishops also argue that May's refusal to give consent to their Tradeway agreements was unreasonable in that Tradeway was on the outer fringe of the five-mile radius. They baldly assert that "surely, as the distance from any of May's stores approaches the outer limits of the restriction, the refusal to consent becomes less reasonable."

We are compelled to note that the court must give effect to the intention of the parties as expressed by the language of their contract. The rights of the parties will be determined according to their contract in absence of a legal impediment. *Jenkins v. King* (1946), 224 Ind. 164, 65 N.E.2d 121. In discussing a restrictive covenant in an employment contract, our Supreme Court in *Jenkins, supra,* at 123, stated:

> "In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties. Their sole duty is to find out what was meant by the language of the instrument. In other words, the object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties as expressed in the language used. . . . " (Citations omitted).

Unishops and May's, both corporate entities, signed a contract which was the result of negotiation, rather than adhesion.[2] At the time of contracting, Unishops agreed to the "five-mile radius" terms in the covenant. This term is not ambiguous and, therefore, requires no judicial construction. May's later refusal to consent to Unishops' violation of this term is hardly unreasonable. May's is merely insisting upon adherence to the terms of the contract, freely agreed upon by both parties.

Unishops' contention that they should have been allowed to give May's a demand for consent before they learned of May's refusal is specious. In view of the circumstances, May's action was an expeditious one. As soon as it learned that Unishops were negotiating with Tradeway, it sent a letter to Unishops informing them that this action would be a violation of their agreement. Instead of waiting for the procedural nicety of being informed in writing, May's acted promptly to put Unishops on notice. Such timely action might have prevented Unishops costly involvement with Tradeway had they but heeded the letter and the terms of their contract with May's. Furthermore, Unishops make much of May's refusal to give consent in a "reasonable" fashion, yet they fail to show us how they were prejudiced by such action.

## IV.

### Unclean Hands

Unishops argue that the trial court erred when it failed to apply the equitable doctrine of "unclean hands." They cite *Jos. Guidone's Food Pal., Inc. v. Gardner & Guidone, Inc.* (1972), 153 Ind.App. 9, 285 N.E.2d 834 for the proposition that in order for a party to obtain injunctive relief, he must come into court "with clean hands." May's, they contend, failed to do this by continually being in breach of the contract payment provisions to Unishops. The testimony, on this point, is conflicting. Assuming *arguendo,* May's was, in fact, consistently late in its payments to Unishops, we note that Unishops consistently accepted these payments. No evidence was introduced to show that Unishops ever attempted to exercise the contract's remedial provisions provided for late payments or that they were injured by May's alleged actions in any way. We conclude that Unishops impliedly waived any objections they may have had to May's conduct by their knowing and willing acquiesence to May's pattern of payments.

2. Interestingly, this contract was prepared by Unishops. Both parties were sophisticated corporations with ready access to legal counsel.

As such, this was not a situation in which a party with inferior bargaining power was forced into an unfavorable contract.

## V.

### Relief

 Finally, Unishops complain that the relief granted by the trial court was beyond the scope of the pleadings and evidence adduced at trial. The provisions of the judgment, in issue, states that Unishops are enjoined from:

> "(c) diverting or attempting to divert, by any means whatsoever, directly or indirectly, any business, customers, property or merchandise inventory from May's Family Centers, Inc., or otherwise changing the status quo of the business presently operated by the defendants Unishops M & B of Indiana, and Central Textile of Indiana, Inc., in any of the stores operated by May's Family Centers, Inc., in which said Unishops M & B of Indiana, Inc., and Central Textile of Indiana, Inc., are licensees."

In *Cressy v. Shannon Continental Corp.* (1978), Ind.App., 378 N.E.2d 941 this Court reviewed the equitable relief fashioned by the trial court, in restoring a partnership relationship. There, the Court said, that the trial court was authorized by Ind. Rules of Procedure, Trial Rule 54(C) to grant the relief to which a party proved himself entitled even though such relief was not demanded in the pleadings. In the case at bar, Unishops assert that the relief granted by this portion of the judgment was not specifically pleaded in the complaint. They are correct. We, however, conclude that the trial court had the discretion to grant whatever relief it deemed appropriate. *See Cressy, supra.* Unishops' claim that there was no evidence in the record to support this portion of the judgment is unfounded.

In light of the facts and circumstances surrounding the case at hand, we conclude that the restrictive covenant was reasonable and should be enforced by injunctive relief.

Accordingly, we affirm the trial court's judgment.

GARRARD, P. J., and HOFFMAN, J., concur.