

**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED
Jul 19 2013, 6:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT H. LITTLE**
Brookston, Indiana

ATTORNEYS FOR APPELLEE:

**EDWARD P. DUMAS**
**RUSSELL DEAN BAILEY**
Dumas & Mahnesmith, P.C.
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH SCHOLZ, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 37A03-1211-PL-493 |
| | ) | |
| LORRAINE KIRK, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JASPER CIRCUIT COURT
The Honorable John D. Potter, Judge
Cause No. 37C01-1007-PL-480

**July 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

This appeal involves a family dispute between a brother, Kenneth Scholz ("Scholz"), and sister, Lorraine Kirk ("Kirk"), regarding 117 tillable acres of farmland ("the Farmland")[1] left to them and their sister, Shirley Ann Duley ("Duley"),[2] upon the death of their mother, Edith Scholz ("Edith").

This case returns to our Court following a dispute between Scholz and Kirk—in the probate proceedings and on appeal—regarding the terms of Edith's will pertaining to the Farmland and the division of rental income from the Farmland. *See In re Supervised Estate of Scholz*, 859 N.E.2d 731 (Ind. Ct. App. 2007), *reh'g denied*. In that appeal, we held that Edith's will provided that Scholz would have a "life estate *to farm the land*" and directed that the "'equitable proceeds' from the farming be shared" with his sisters. *Estate of Scholz*, 859 N.E.2d at 735 (emphasis in original). We affirmed the probate court's determination that Scholz would receive income from the Farmland as a life estate holder and as a beneficiary/landlord and that Kirk and Duley would receive income as beneficiaries/landlords. Specifically, Scholz would receive the proceeds of his tenant farming, and each sibling was to receive a one-third of the landlord's share of the annual rental income.

Scholz, who was a tenant farmer on the Farmland, paid Kirk her one-third share of the rental income from the Farmland for 2008 crop season but did not pay her the one-third share of the rental income for 2009-2011 crop seasons. Kirk filed a complaint

---

[1] The Farmland contains a total of 127.92 acres but has 117 tillable acres. Part of the Farmland is located in Jasper County (37 tillable acres) and the other part is located in Pulaski County (80 tillable acres).

[2] Duley was neither a party in the case below nor is a party on appeal.

2

against Scholz, seeking payment for the 2009-2011 crop seasons and alleging that Scholz's obligation to pay rental income was an issue that had already been established by this Court's opinion in *Estate of Scholz.* Scholz now appeals the trial court's judgment in favor of Kirk and against Scholz in the amount of $16,380.00 for Kirk's one-third share of the rental income from the Farmland for 2009, 2010, and 2011 plus prejudgment interest of $2,584.89.

We affirm in part and reverse in part.

## ISSUES

1. Whether the trial court erred by determining that Scholz owed rental income to Kirk for the Farmland.

2. Whether the trial court erred in its calculation of the rental income owed to Kirk.

3. Whether the trial court erred by awarding Kirk prejudgment interest.

## FACTS

This case involves the continuing dispute between a brother and sister—Scholz and Kirk—over the Farmland left to them by their mother, Edith. In 1983, Edith executed a will ("Edith's Will"), in which she made specific provisions regarding the Farmland as follows:

> I give, devise and bequeath all of the property that I may own or have an interest in at the time of my death, in equal shares, to my children[3] . . . as joint tenants in common . . . It is my intention and my wish that my farm land remain in the family as long as possible. Therefore, all of the above joint tenants in common are subject to a life estate that I hereby grant to my beloved son, Ken Scholz, so that he may farm my farm land during his life.

---

[3] At the time Edith executed her will, she had four children. One child, however, predeceased Edith. Thus, at the time of Edith's death, there were three children—Scholz, Kirk, and Duley—who were beneficiaries of Edith's estate.

3

My son, Ken Scholz, will be granted the first right to purchase any of the farmland that his . . . sisters wish to sell. Any sales of the bequeathed farm land shall be made at a fair-market price. The joint tenants shall share annually in the equitable proceeds of the life estate.

(Kirk's Ex. 1).

Edith died in 2001. An estate was opened ("estate proceeding") in the Jasper Circuit Court ("the probate court") to probate Edith's Will, and Scholz was appointed as personal representative. During the estate proceeding, the trial court determined, based on a stipulation among the interested parties, that Edith's Will devised the Farmland to Scholz, Kirk, and Duley "as equal tenants in common, and not as joint tenants with right of survivorship[.]" (Kirk's Ex. 2 at 2; App. 34). *See also Estate of Scholz*, 859 N.E.2d at 733.

Also during the estate proceeding, Scholz, "as 'Personal Representative and beneficiary of the estate,'" asked the probate court to construe Edith's Will. *Estate of Scholz*, 859 N.E.2d at 733. Specifically, Scholz sought to have the probate court (1) construe the scope of his life estate in the Farmland and (2) to interpret the meaning of the clause that the beneficiaries "'share annually in the equitable proceeds of the life estate'" and instruct the beneficiaries of the estate regarding that meaning. *Id.* (quoting Edith's Will).

On March 30, 2004, the probate court in the estate proceeding issued an order ("the Estate Order"), in which the trial court determined that Edith's Will gave Scholz "the right to a life estate in [the Farmland] and the right to farm it for the remainder of his life, but also provid[ed] that [Kirk and Duley] would share in the farm proceeds

4

annually." (Kirk's Ex. 2 at 3; App. 35). *See also Estate of Scholz*, 859 N.E.2d at 733. The probate court also determined that, "so long as [Scholz was] farming" the Farmland, he would "receive the landlord and tenant's share of the annual proceeds of the farm for an undivided one-third, and the tenant's share for the undivided two-thirds of said farm, with Shirley Ann Duley and Lorraine Kirk each receiving an undivided one-third of the landlord's share of the annual proceeds of said farm." (Kirk's Ex. 2 at 3; App. 35). *See also Estate of Scholz*, 859 N.E.2d at 734.

Scholz appealed the Estate Order, arguing, in part, that the probate court had disregarded his life estate and the rights accompanying the life estate, including the right to receive all the income from a life estate. Scholz also argued that the probate court had erroneously determined that he could not receive any of the income from the Farmland. We disagreed with Scholz. We held that the probate court had not erred and had not disregarded the life estate because it was clear that Edith's Will provided that Scholz would have a "life estate *to farm the land*" while at the same time directed that the "'equitable proceeds' from the farming be shared" with his sisters. *Estate of Scholz*, 859 N.E.2d at 735 (emphasis in original). We also held that the probate court had not "deprived" Scholz of income from the Farmland and that specifically, Scholz—"as the life-estate holder"—would "receive[] the proceeds of his tenant farming *and"*—"as beneficiary"—would "receive[] one-third the annual rental income (i.e., one-third of the landlord share). *Id.* at 736 (emphasis in original).[4]

---

[4] We also affirmed the probate court's determination that Scholz had engaged in self-dealing by "acting in the capacity of personal representative and renting to himself the farmland he held in his life estate at an amount less than one-third of the fair market rental value[.]" *Estate of Scholz*, 859 N.E.2d at 736.

5

In February 2008, the probate court entered an order approving a petition to distribute the property from the estate proceeding and to close the estate. Thus, the probate court distributed the Farmland to Scholz, Kirk, and Duley "as tenants in common, subject to the life estate of Ken Scholz to farm the land as created by [Edith's Will]." (App. 47).

Thereafter, in 2008, Scholz entered into a lease agreement with Kirk to lease her "1/3 interest in 117 acres" of the Farmland for the "annual rental of $100 per acre." (Kirk's Ex. 4 at 1; App. 37). Thus, Scholz agreed to pay Kirk $3,900.00 for her one-third landlord share of rental income for the Farmland.[5] The term of the lease was from March 1, 2008 to February 28, 2009. Scholz later paid Kirk the $3,900.00 due for the 2008 crop season.

On March 11, 2009, Scholz's attorney sent a letter to Kirk and Duley regarding the 2009 rent for the Farmland and "payment of farm proceeds from [their] inheritance." (Kirk's Ex. 5 at 1; App. 25). Scholz's attorney wrote that it was his "understanding" that "the [Estate] Order" from the probate court was that Kirk and Duley were "each entitled to *one-sixth (1/6)* of the annual proceeds of the farm" and that the "combined proceeds [were] actually two-thirds (2/3) to [Scholz] and one-third (1/3) to the two [sisters.]" (Kirk's Ex. 5 at 1; App. 25) (emphasis added). The letter provided that Kirk and Duley would have two options to receive payment for their one-sixth share: (1) a "share crop basis" that "would be based on the net annual proceeds as determined at the end of the crop year, after all crops [were] sold" or (2) a "cash rent basis" that would be based on

---

[5] 117 acres x $100.00 per acre = $11,700.00 rent ÷ 1/3 share of rent = $3,900.00.

6

"$100.00 per acre" and "paid to [each sister] by May 15, 2009." (Kirk's Ex. 5 at 1; App. 25). In the letter, Scholz indicated that if Kirk or Duley did not respond to the letter or give Scholz direction on how they would like to be paid, Scholz would "proceed according to the Court Order issued from the estate [the Estate Order]." (Kirk's Ex. 5 at 2; App. 26).

Scholz and Kirk did not reach an agreement regarding payment for Kirk's share of the rental income for the Farmland. On December 29, 2009, Scholz sent a check to Kirk. The check was written for $1,698.34—which was a one-sixth share of the rental income from the Farmland for 2009 based on $100.00 per acre—and contained a note in the memo section stating "pd in full rent." (Kirk's Ex. 8; App. 29). Kirk did not cash the check.

In March 2010, Kirk's attorney wrote Scholz a letter, requesting an accounting for the 2009 crop year plus documentation regarding rental of the Farmland. Thereafter, Scholz responded by letter, stating that he had "cash rented the farm at $100.00 per acre, for a total of $12,000.00, as in the prior year" and that "each child receives 1/6 (or $2,000.00)." (Kirk's Ex. 7; App. 31). Scholz also indicated that he was deducting various farming costs—such as recording fees, stump removal, and burial of concrete foundations—from Kirk's and Duley's share of the rental payment and proposed that Kirk would be entitled to a net payment of $1,698.66.[6]

---

[6] Scholz calculated the net payment of $1,698.96 based on the following:
    $2,000.00 (1/6 share of $12,000.00 cash rent)
   - $   35.00 (1/3 of recording costs)
   - $ 266.34 (1/3 cost of stump and concrete work)
    $1,698.66

In June 2010, Kirk filed a notice of claim in the Jasper County Small Claims Court. In her notice, Kirk alleged that Scholz "fail[ed] to tender [Kirk's] full share of 2009 share crop rent in the sum of $3,900.00, in accordance [with the Estate Order], dated March 30, 2004, and a Lease Agreement, executed in 2008." (App. 32).

Scholz then filed a counterclaim against Kirk and requested that the cause be transferred to the plenary docket. In Scholz's counterclaim, he alleged that because Kirk had not responded to his letter regarding the 2009 crop season, "she is entitled to nothing." (App. 40). Scholz's counterclaim provided that he had paid Kirk $1,698.66 for her share under the "cash rent offer" and that she was not entitled to any further payment. (App. 40). Scholz also alleged that, if he were to pay Kirk under the "crop share" method, he had overpaid Kirk for her share of the Farmland for 2009 and sought reimbursement of the overpayment. Additionally, Scholz also sought reimbursement, plus interest, from Kirk for expenses Scholz had incurred during the 2010 planting season.[7] (App. 40).

In July 2010, the case was transferred to the plenary docket in the Jasper Circuit Court. Kirk then filed an amended complaint, alleging that Scholz had failed to pay her rent for the 2009, 2010, and 2011 crop seasons despite his "certain obligations" owed to her by virtue of the 2004 Estate Order. (App. 52). Kirk argued that she was entitled to judgment against Scholz "in a sum equal to the fair value of the rents in an undivided one-third (1/3)" of the Farmland for 2009-2011. (App. 52). Kirk also sought attorney

---

[7] Scholz alleged he had expenses of $37,899.55 ("chemicals, fertilizers, and related services[;]" seed; and "[c]ustom work") and sought reimbursement from Kirk for $6,316.56.

8

fees based on Scholz's "frivolous" defense that he did not owe her any rental income for the 2009-2011 crop years. (App. 52).

In June 2012, the trial court held a bench trial. Kirk argued that she was entitled to payment of rental income for the Farmland based on the doctrine of law of the case. Specifically, Kirk argued that the issue had been previously determined by the Court of Appeals in *Estate of Scholz*, wherein the Court determined that the three siblings—Scholz, Kirk, and Duley—were each entitled to a one-third share of rental income as landlords of the Farmland. Scholz argued that Kirk had no basis for recovery of rental income from the Farmland because she could not present any evidence of a written lease for 2009, 2010, or 2011.

During the hearing, Kirk presented testimony from Richard Maxwell ("Maxwell")—a real estate broker and appraiser who also was a farmer—on the issue of damages and the fair market rental values for the Farmland. Maxwell testified that the fair market value for cash rent for the Farmland for the 2009-2012 crop seasons was between $120.00 and $160.00 per acre.[8]

The trial court took the matter under advisement and later issued an order, entering judgment in favor of Kirk and against Scholz on Kirk's amended complaint and on Scholz's counterclaim. The trial court determined, based on Maxwell's testimony, that the fair market rental value of the Farmland was $140.00 per acre. The trial court, further determined that "[t]his case [could] be resolved by simple math" and ordered Scholz to pay Kirk $16,380.00 for her one-third share of the rental income from the Farmland for

---

[8] At trial, Kirk requested damages for the 2012 crop season.

9

2009, 2010, and 2011 crop seasons[9] plus $2,584.89 in prejudgment interest, resulting in a total judgment of $18,964.89. Scholz now appeals.

DECISION

Scholz argues that the trial court erred by entering judgment in favor of Kirk and against him. Specifically, he contends that the trial court erred: (1) by finding that he was obligated to pay rental income to Kirk for the Farmland; (2) in its calculation of the amount of rental income owed; and (3) by awarding prejudgment interest.

Before we review each argument, we first turn to our standard of review. Here, the trial court held a bench trial and issued an order containing findings of fact and conclusions of law. When a case proceeds to a bench trial and the court enters findings of fact in support of its judgment, we will not set aside those findings of fact or that judgment unless they are clearly erroneous. *Woodruff v. Ind. Family and Social Serv. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012), *cert. denied*. *See also* Ind. Trial Rule 52(A). Findings of fact are clearly erroneous "'only when the record contains no facts to support them either directly or by inference.'" *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997) (quoting *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994), *reh'g denied*). "'A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.'" *Woodruff*, 964 N.E.2d at 790 (quoting *Nichols v. Minnick*, 885 N.E.2d 1, 3 (Ind. 2008), *reh'g denied*). Before we determine that a finding or a

---

[9] The trial court determined the damages as follows: $140.00 rent per acre x 117 tillable acres = $16,380.00 total rent per year ÷ 1/3 share of rent = $5,460.00 rent due to Kirk x 3 crop years = $16,380.00. The trial court did not enter judgment for the 2012 crop season.

10

conclusion is clearly erroneous, our review of the evidence must leave us "with the firm conviction that a mistake has been made." *Yanoff*, 688 N.E.2d at 1262.

1. Obligation to Pay Rental Income

Scholz first argues that the trial court erred by finding that he was obligated to pay a one-third share of rental income to Kirk for the Farmland for 2009-2011 crop seasons and that there was no legal basis for ordering him to pay rental income to Kirk. Scholz contends that he had no obligation to pay rental income to Kirk because there was no rental agreement for the 2009-2011 crop seasons and because there was no evidence that he was required to pay rent to Kirk as a co-tenant of the Farmland.

On the other hand, Kirk argues that Scholz's argument that he had no obligation to pay rental income is precluded by the law of the case doctrine. Kirk contends that Scholz was obligated to pay her rental income on the Farmland because this Court had affirmed the probate court's interpretation of Edith's will and resulting determination that Scholz had a life estate to farm the Farmland and that Scholz, Kirk, and Duley would each receive a one-third landlord share of rental income for the Farmland.

We agree that Scholz is precluded from challenging his obligation to pay rental income to Kirk, but we do not agree that it is based on the doctrine of law the case as that doctrine applies only to subsequent actions in the *same* case. *See Williams v. Williams*, 432 N.E.2d 417, 418 (Ind. Ct. App. 1982) (specifying that law of the case doctrine "applies only to subsequent proceedings in the same action and not to different actions"). Instead, Scholz is precluded from challenging his obligation to pay rental income to Kirk based on *res judicata*, more specifically on issue preclusion.

11

"The doctrine of *res judicata* prevents the repetitious litigation of disputes that are essentially the same." *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005) (citing *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005), *reh'g denied*), *trans. denied*. "The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion, also referred to as collateral estoppel." *Indianapolis Downs*, 834 N.E.2d at 703.

> When discussing issue preclusion, or collateral estoppel, we have explained:

> Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument.

*Id.* at 704 (internal citations omitted). A determination of whether to allow the application of collateral estoppel involves an analysis of the following considerations: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Id.*

The issue of Scholz's obligation to pay and the division of rental income from the Farmland in light of Scholz's life estate to farm the Farmland was previously decided in the estate proceeding. There, Scholz requested the probate court to interpret the meaning of the clause in Edith's Will that the beneficiaries would "'share annually in the equitable proceeds of the life estate,'" and he specifically asked the court to instruct the

12

beneficiaries of the estate, which included Kirk, Duley, and himself, regarding that meaning. *Estate of Scholz*, 859 N.E.2d at 735. The probate court determined—and we affirmed on appeal—that Scholz, Kirk, and Duley would each receive a one-third landlord share of the rental income from the Farmland. The record reveals that Scholz, Kirk, and Duley entered into a lease agreement for the 2008 crop season to determine the amount of rent per acre for the Farmland. After they agreed to a per acre rent of $100.00, Scholz paid Kirk a one-third landlord share of the rental income for 2008. However, after Scholz proposed to pay Kirk a one-sixth landlord share for the 2009 crop season, Kirk brought this action and sought to have Scholz pay the one-third landlord rental share that the probate court and this Court determined Scholz was obligated to pay. Here, Scholz had a full and fair opportunity to litigate the issue of his obligation to pay and division of rental income for the Farmland, and it would not be unfair to apply collateral estoppel given the facts of the particular case. Thus, Scholz is collaterally estopped from arguing that he did not have an obligation of pay a one-third landlord share of rental income to Kirk. *See, e.g.*, *French*, 821 N.E.2d at 896 (explaining that a party was precluded, based on *res judicata*, from challenging liability for debt where the issue of liability had already been litigated but was not precluded from challenging the amount of debt).

2. Amount of Rental Income

Scholz contends that the trial court erred in its determination of rental income owed to Kirk for the 2009-2011 crop seasons. Specifically, he alleges that the trial court

13

erred because the amount of damages was not supported by the evidence and because its award of damages exceeded the amount of rent requested by Kirk.

Here, Kirk filed an amended complaint in which she alleged that Scholz had failed to pay her rent for the 2009, 2010, and 2011 crop years and requested judgment against Scholz "in a sum equal to the fair value of the rents in an undivided one-third (1/3)" of the Farmland for 2009-2011. (App. 52). At trial, Kirk presented evidence from Maxwell, a real estate broker and farming appraiser, that the fair market rental value for the Farmland for those crop seasons was between $120.00 and $160.00 per acre. After trial, Kirk presented the trial court with proposed findings and conclusions in which she suggested that reasonable rent for 2009-2011 ranged from $122.00 to $135.00. The trial court determined that the fair market rental value for the Farmland was $140.00 per acre for 2009-2011 crop seasons. The trial court then entered judgment in favor of Kirk and against Scholz in the amount of $16,380.00 for Kirk's one-third share of the rental income from the Farmland for 2009, 2010, and 2011.

Scholz contends that the trial court's determination that the fair market rental value of the Farmland to be $140.00 per acre was not supported by the evidence. He suggests that the rent should be calculated at a $100.00 per acre rental price just as the parties had agreed upon for the 2008 crop season.

Scholz's argument is nothing more than a request to reweigh the evidence, which we will not do. The record contains evidence that a fair market rental value for the Farmland was between $120.00 and $160.00 per acre. Thus, there is evidence to support the trial court's determination that the fair market rental value was $140.00 per acre.

14

Scholz also contends that the trial court's determination of the amount of rental income owed to Kirk was erroneous because it exceeded the amount requested by Kirk, and he suggests that Kirk should be restricted to the amount set forth in her proposed findings and conclusions. We disagree.

A trial court is "authorized by Ind. Rules of Procedure, Trial Rule 54(C) to grant the relief to which a party proved [herself] entitled even though such relief was not demanded in the pleadings." *Unishops, Inc. v. May's Family Centers, Inc.*, 399 N.E.2d 760, 767 (Ind. Ct. App. 1980). Indiana Trial Rule 54(C) provides:

> **(C) Demand for judgment.** A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings*.

(Emphasis added). As stated above, the record contains evidence supporting the trial court's determination that the fair market rental value of $140.00 per acre. Accordingly, the trial court did not err by entering judgment for Kirk in an amount that exceeded that suggested by Kirk. *See, e.g.*, *Unishops*, 399 N.E.2d at 767 (holding that, pursuant to Trial Rule 54(C), the trial court was not restricted to the party's pleadings and that it "had the discretion to grant whatever relief it deemed appropriate" and supported by the evidence). We affirm the trial court's determination of the amount of damages for the rental income for the Farmland.[10]

---

[10] Scholz also suggests that the trial court's determination of the amount of damages was erroneous because the trial court did not give him credit for the check he wrote to Kirk that contained a one-sixth payment for the 2009 crop season and for expenses he incurred for farming costs. The evidence is undisputed that Kirk did not cash the check. Additionally, Maxwell testified at trial that when farmland is

15

3. Prejudgment Interest

Lastly, Scholz argues that the trial court erred by awarding prejudgment interest. Specifically, he contends that the prejudgment interest was not appropriate because the trial court exercised its judgment in determining the amount of damages. On this issue, we agree with Scholz.

Prejudgment interest may be awarded where the amount of damages or "'the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable.'" *Kummerer v. Marshall*, 971 N.E.2d 198, 201 (Ind. Ct. App. 2012) (quoting *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1078 (Ind. Ct. App. 2003), *trans. denied*), *reh'g denied*, *trans. denied.* An award of prejudgment interest is proper when the trier of fact does not have to exercise judgment in order to assess the amount of damages. *Kummerer*, 971 N.E.2d at 201.

Here, the trial court stated that the amount of damages was resolved by "simple math." (App. 8). However, it is clear from the record, and as discussed above, the trial court was required to exercise its judgment when determining damages. Kirk presented evidence that the fair market rental value for the Farmland was between $120.00 and $160.00 per acre, and the trial court exercised its judgment by determining that the fair market value for the Farmland for the three years at issue was $140.00. Only *after* the trial court used its judgment to determine the fair market value was it able to use a simple mathematical calculation in determining the amount of damages. Because the trial court exercised its judgment in its determination of the amount of damages, it erred by

rented on a cash rent per acre basis, the tenant is responsible for payment of farming costs. Accordingly, we find no error in the trial court's determination of the amount of damages.

16

awarding prejudgment interest to Kirk. *Cf. Kummerer*, 971 N.E.2d at 202 (affirming the trial court's denial of prejudgment interest where the trial court was required to use its judgment to assess damages); *Larson v. Karagan*, 979 N.E.2d 655, 663 (Ind. Ct. App. 2012) (reversing trial court's denial of prejudgment interest where the amount of damages was clear and did not require any interpretation or judgment). Thus, we reverse the trial court's award of prejudgment interest.

Affirmed in part and reversed in part.

KIRSCH, J., and VAIDIK, J., concur.