## THE NORTHMAN.

## THE OLYMPIA.

### (District Court, S. D. New York. July 11, 1905.)

COLLISION—STEAM VESSELS MEETING—VIOLATION OF RULES.

A steamer and a tug with a tow both *held* in fault for a collision when meeting in East river; the tug for indicating a course to the left for passing when she should have gone to the right, and the steamer for not keeping a lookout, who could have seen the course of the tug, and enabled the steamer to stop and reverse in time to avoid collision, one blast of the tug's signal having been drowned by the steamer's signal, and not heard.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 40.]

In Admiralty. Suit for collision.

James J. Macklin, for libellants and the Olympia.
Convers & Kirlin, for the Northman.

ADAMS, District Judge. This action was brought by Harry Goodwin and Frederick Goodwin, the owners of Scow No. 28, to recover from the steamer Northman the damages caused to the scow by a collision with the Northman in the East River on the 30th day of December, 1901. The scow, in tow on the port side of the tug Olympia, and projecting about 30 feet ahead, was bound up the East River. The Olympia was also owned by the libellants. The Northman was bound down the river. About 10 o'clock A. M. the scow and the Northman came together doing some injury to the scow. The collision occurred less than 300 feet from the Manhattan shore, off Coenties slip. The tide was flood.

The principal dispute is with respect to the positions of the vessels to each other, when first seen, the libellants contending that the tug and tow were rounding the Battery and had the steamer on their starboard bow, while the latter contends that the vessels were meeting a trifle to the port of each other, but substantially head and head.

The Olympia, proceeding upon its theory, attempted to pass to the left, giving a signal of two blasts and starboarding slightly. The Northman, considering the positions to be such that they should go to the right, gave a signal of one blast and ported. Their respective positions were not very much affected by the steering but when in the close vicinity of each other, seeing the danger of collision, both vessels reversed, throwing their bows to the starboard and their sterns to the port. They came together without great force, the Northman headed somewhat towards New York and the Olympia somewhat towards Brooklyn, the Northman's port bow striking the scow's port corner, and doing some damage.

The testimony with respect to the original positions is conflicting but I think decidedly preponderates against the libellants. While it is doubtful if the tug and tow were ever to the port of the steamer, as claimed by her, they were without doubt end on or nearly so and should have gone to the right, under Rule 1 and Art. 18, Inland Rules. In attempting to initiate a two whistle course,

the tug made a fatal mistake. The only question that remains is, whether the steamer contributed to the collision. It is urged by the libellants that she had no lookout and did not reverse as soon as she should.

The steamer did not have a lookout, and it is probable that if she had had one and he had properly performed his duty, that the tug's attempted passing to the left would have been observed sooner and the steamer could have seen the danger in time to have avoided it, as the reversing of the vessels almost overcame their motion through the water. One of the tug's blasts of the signal of two was probably drowned by the steamer's blast of one. The Nereus (D. C.) 23 Fed. 448; In re Central R. R. of New Jersey (D. C.) 92 Fed. 1010, 1012. It appears that a lookout might not have aided the situation so far as the signals were concerned but it is probable that one would have seen the movement of the tug to the left sooner than those on the bridge of the steamer did. It seems to me that the absence of a lookout must be deemed a contributing fault, in connection with the steamer's failure to reverse when it could have been determined that without that movement of the steamer's engine there would doubtless be a collision. The navigating officers who were on the bridge say that the tug and tow were first seen $\frac{1}{4}$ of a mile away, just after the rounding of the Battery. The signals were then exchanged, which were supposed by those on the steamer to constitute an agreement to go to the right. The tug, however, did not act on such a theory of navigation but kept getting closer to the steamer and finally sheered to port across her bow. The steamer kept on at her full speed, of about 5 miles, until in the jaws of the collision, and then reversed. She should have seen the necessity for reversing sooner. It soon became obvious that the tug was not changing her course to starboard, as her bearing did not widen, notwithstanding the steamer's change to starboard, and it should have been apparent that a collision was imminent. Notwithstanding the necessity of preparing for danger, however, the steamer did not reverse until it was too late to stop her headway in time and for this fault, I think she must also be condemned.

Decree for the libellants for half damages.