EBBESKOTTE *v.* TYLER.

[No. 18,865. Filed May 28, 1957.]

434

*Charles Davis* (deceased) and *Leonard* v. *Campanale,* of Mishawaka, for appellant.

*Robert S. Currey,* of Mishawaka, for appellee.

COOPER, J.—The appellant brought this action to enjoin the appellee from violating an alleged negative covenant contained in a written contract between the appellant and the appellee. Appellee's demurrer to the complaint was sustained by the trial court, the appellant refused to plead further and judgment was rendered for the appellee, from which the appellant appealed, assigning as error the sustaining of the demurrer.

The substance of the averments in the appellant's amended complaint are:

"1. That plaintiff is now, and at all times herein mentioned was, an accountant engaged in the profession of public accounting and auditing in the City of Mishawaka, Indiana, and in the vicinity thereof.

"2. That on the 13th day of December, 1948, plaintiff, by a written contract, employed defendant as an accountant to assist him in his profession in said city and vicinity; that defendant agreed in said contract, that she would not during her employment or upon the termination thereof either for herself, or on behalf of any other person, persons, partnership, or association by whom she might be subsequently employed, or with whom she might be subsequently associated, accept, solicit or offer services from or to clients of plaintiff directly or indirectly, nor would she accept or solicit employment from clients of plaintiff directly or indirectly.

"3. That it was understood and intended by plaintiff and defendant, that defendant was restricted by such agreement from accepting or soliciting employment, as an accountant, directly or in-

directly, for herself or on behalf of any other persons, partnerships or associations by whom she might be subsequently employed or with whom she might be subsequently associated, in the City of Mishawaka, Indiana and in the vicinity thereof.

"4. That from said 13th day of December, 1948, until the 27th day of October, 1954, defendant worked for plaintiff and performed such duties for which she was employed.

"5. That during said time which defendant was employed by plaintiff, as aforesaid, defendant became fully acquainted with plaintiff's methods in conducting his profession and became personally acquainted with plaintiff's clients and their residences.

"6. That the employment of defendant terminated on the 27th day of October, 1954, and upon the . . . . day of January, 1955, defendant opened an office in the City of Mishawaka, Indiana, for public accounting and auditing.

"7. That since said . . . day of January, 1955, defendant has been engaged, and now is engaged, directly and indirectly through others in accepting and soliciting employment from plaintiff's clients, in violation of her agreement with plaintiff.

"8. That the employment of plaintiff's said clients were, and are, of great value to him, and he spent considerable time, effort and money in building up his business and securing said clients.

"9. That defendant's aforesaid acceptance and solicitation of employment from plaintiff's clients has greatly damaged plaintiff, and that the continued action of defendant in that regard will cause further damage to plaintiff.

"WHEREFORE, plaintiff prays that defendant be enjoined from accepting and soliciting employment from plaintiff's clients, and that an account may be taken of the damages sustained by plaintiff by reason of the violation of said agreement by the defendant, and judgment be rendered in his favor in that amount, and for such other proper relief as may be just and equitable."

The record before us shows that the written contract of employment, which was entered into on the 13th day

of December, 1948, between the appellant and appellee herein and which was made a part of the foregoing complaint, omitting signatures, reads as follows:

"THIS AGREEMENT, made in the City of Mishawaka, State of Indiana, on December 13, 1946, by Eldon E. Ebbeskotte, public accountant, having principal place of profession at 106 Lincoln-way West, City of Mishawaka, State of Indiana (herein called the 'First Party'), and Francis J. Tyler, residing at Indiana Avenue, Mishawaka, Indiana (herein called the 'Second Party'), witnesseth:

"WHEREAS, the First Party is engaged in the profession of public accounting and auditing in the said City of Mishawaka and in the vicinity thereof and has built and established a valuable and extensive accounting service in said city and vicinity; and

"WHEREAS, great loss and damage will be suffered and sustained by the First Party, if during the term of her employment, or upon the termination, thereof, the Second Party, either for herself, or on behalf of any other person, persons, partnership or association by whom she may be subsequently employed, or with whom she may be subsequently associated, should solicit, or offer service or accept employment from clients of First Party.

"Now, therefore, it is mutually agreed, as follows:

"That Second Party will not during her employment or termination thereof either for herself, or on behalf of any other person, persons, partnership or association by whom she may be subsequently employed, or with whom she may be subsequently associated, accept, solicit or offer service from or to clients of First Party directly or indirectly, nor will she accept or solicit employment from clients of First Party directly or indirectly.

"That the employee covenants that she will not, during or after her employment, disclose any information obtained by her while in the employ of the Employer to any person not employed by the Employer (and or corporation), without the prior written consent of an officer of the Employer.

"That the Employee covenants that she will not. during the term of her employment and for two (2) years thereafter divulge to any person, firm, association or corporation, except by the Employer's express written order, the names or addresses of any clients of the Employer, or any information concerning any of such clients.

"That First Party will set up bonus in escrow to be handed over to Second Party at the end of two-year (2) employment period. If employment is discontinued before two year period, it is understood that bonus is automatically voided and reverts to First Party in consideration of the cost of training new employ. Bonus will be entirely separate from salary and will be handled as agreed upon in writing between First Party and Second Party.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals, the day and year first above written."

The demurrer filed by the appellee and sustained by the trial court is based upon the statutory grounds that, "said complaint does not state facts sufficient to constitute a cause of action". The memorandum attached to said demurrer reads as follows:

"The complaint is based upon a written contract between the parties to this action, a copy of which contract is filed with the complaint and made a part thereof by the plaintiff. Said contract attempts to impose a restraint upon the activities of the defendant, as an accountant and otherwise, which restraint is unreasonable for the reason that the restraint is unlimited as to time and is not confined to a reasonable area. Because of said unreasonableness, and the fact that the contract attempts to place a restriction on defendant's business activities in fields other than those covered by her contract of employment with the plaintiff, the restraint is contrary to the public policy and is invalid and not enforcible in any manner."

The assigned error before us is based upon the trial court sustaining the above demurrer.

It is the general rule of law that in determining the correctness or the lack of correctness of the court's ruling on the demurrer, we are governed by the rule that for the purpose of the demurrer, allegations of the complaint will be construed most strongly in favor of pleadings, as the demurrer admits facts not only directly and specifically alleged in the complaint, but also all facts that can be implied from allegations by reasonable and fair intendment. *Lincoln Operating Co.* v. *Gillis* (1953) 232 Ind. 551, 114 N. E. 2d 873; *Dipert Admx., etc.* v. *Killingbeck et al.* (1953), 124 Ind. App. 18, 112 N. E. 2d 306.

Likewise our court has said: "A complaint which entitles the complainant to any relief is good as against a demurrer." *Halstead* v. *Stahl* (1911) 47 Ind. App. 600, 94 N. E. 1056.

The demurrer presents the following question: (1) Is the contract between the parties unreasonable in that it is unlimited as to time and is not confined to a reasonable area, and, (2) Is the contract against policy, invalid and unenforcible in any manner?

In discussing contracts between employer and employee in restraint of employment, our court has said:

"It is the general rule, to which Indiana adheres, that contracts between employer and employee in restraint of employment, where the restraint is reasonably necessary for the protection of the employer's business and not unreasonably restrictive upon the rights of the employee and not against public policy, are valid and injunctive relief will be extended to prevent their breach." *Welcome Wagon, Inc.* v. *Haschert* (1955) 125 Ind. App. 503, 127 N. E. 2d 103; *Grand Union Tea Company* v. *Walker* (1935) 208 Ind. 245, 195 N. E. 277, 98 A. L. R. 958.

It is fundamental that one who executes a contract

of a certain character is bound by its terms, even though he meant something different and thought the words conveyed his meaning. A court must give effect to the meaning and intention of the parties as expressed in the language of their contract. In the absence of anything to show legal impediment to prevent their entering into any contract they see fit or for their expressing it in the language of their own choice, the rights of the parties must be determined according to the contract. Our Supreme Court has said in case of *Jenkins* v. *King* (1946), 224 Ind. 164, 65 N. E. 2d 121:

> "In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties. Their sole duty is to find out what was meant by the language of the instrument. In other words, the object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties as expressed in the language used. 12 Am Jur. *Contracts* §20, p. 517 and §§226 and 227, p. 745 et seq.; *Western & Southern Life Ins. Co.* v. *Dale* (1937), 213 Ind. 601, 611, 12 N. E. 2d 350; *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 441, 175 N. E. 132. See also, *Evans* v. *Consumers' Gas Trust Company* (1891), (Ind.) 29 N. E. 398; 31 L. R. A. 673; *The Continental Insurance Company* v. *Vanlue* (1890), 126 Ind. 410, 416; 26 N. E. 119; 10 L. R. A. 843."

The negative convenant sought to be enforced is to enjoin the appellee from accepting and soliciting employment from the appellant's clients based upon paragraph four of the contract between parties, as hereinabove set forth.

When considered in connection with the other provisions of the contract and the situations of the parties at the time, it is evident that the negative covenants were placed in the contract for the benefit of the appellant. We see nothing unreasonable

or against public policy in the appellee contracting after the termination of her employment, not to accept, solicit or offer service from or to the clients of her former employer directly or indirectly, or that she would not accept or solicit employment from the clients of her former employer. It seems obvious that both parties appreciate the value of the employer's list of clients, the data concerning the client's business, the fees paid to the employer for the services rendered in accounting or auditing services and other similar confidential information which became open to the appellee as a result of her employment. Likewise, it is apparent from the language of the contract as a whole, that the negative covenant was deliberately inserted without limitation and was unmistakably intended to protect the appellant at any time the appellee might leave his service from the injurious consequences on the part of the appellee made possible by her use of the confidential information and knowledge acquired by the appellee in the course of her employment under the contract sued upon. It is interesting to note that in the present case at bar the appellant did not seek to enjoin the appellee from practicing or working as an accountant in Mishawaka, Indiana and vicinity or elsewhere, but merely sought to enjoin the appellee from soliciting and accepting employment directly or indirectly from the appellant's clients. The restraint sought to be imposed is, we think, reasonable, not against public policy and, therefore, enforcible.

The theory advanced by the appellee that the negative covenant is not confined to a reasonable area is not too impressive. It seems apparent from the relation of the parties and their purposes and intents, as expressed in the contract and the reasonable intendments therefrom, that the restrictive convenants were applicable to the City of Mishawaka

and vicinity. Such, also, is the averments of the complaint and admitted by the demurrer.

The ordinary and common usage of the word, "vicinity," is a relative term, synonymous with such words as neighborhood or community or locality.

" 'Vicinity' is some (advance) because it means nearness, neighborhood, that distance in which producers are neighbors." *Fleming* v. *Farmers Peanut Co.*, 5 Cir. (1942), 128 F. 2d 404, 406.

"In ordinary and common usage, the word 'locality' is synonymous in meaning with the words place, vicinity, neighborhood and community." *Conley* v. *Valley Motor Transit Co.*, 6 Cir. (1943), 139 F. 692, 693.

Our Supreme Court has held that a restriction of an area of eleven miles is not unreasonable, and it has also held that a restrictive convenant encompassing an entire county was good. *Buanno* v. *Wienraub* (1948), 226 Ind. 557, 564, 565, 81 N. E. 2d 600 and authorities cited.

Likewise, the contention of the appellee that the restraint is unlimited to time, and, therefore, contrary to public policy and is invalid and unenforcible cannot prevail for the reason that our Supreme Court in many cases has said the fact that the negative covenant is indefinite as to time does not invalidate the contract.

Our Supreme Court said in the case of *Martin* v. *Murphy* (1891) 129 Ind. 464, 468, 28 N. E. 1118:

"A contract, reasonably limited as to the territory in which the specific business is not to be carried on, is not rendered invalid because the restriction as to time is indefinite or general. *Bowser* v. *Bliss, supra; Beard* v. *Dennis, supra;*" See also *Eisel et al.* v. *Hayes* (1894) 141 Ind. 41, 43, 40 N. E. 119; *O'Neal* v. *Hines* (1895) 145 Ind. 32, 35, 43, N. E. 946.

A very comprehensive statement was made by the Supreme Court of Minnesota in the case of *Granger* v. *Craven* (1924) 159 Minn. 296, 199 N. W. 10, 52 A. L. R., 1356, wherein the court said:

"Courts scrutinize carefully all contracts limiting a man's natural right to follow any trade or profession anywhere he pleases and in any lawful manner. But it is just as important to protect the enjoyment of an establishment in trade or profession, which its possessor has built up by his own honest application to every day tasks which every day imposes upon the ordinary man. What one creates by his own labor is his. Public policy does not intend that another than the producer shall reap the fruits of labor. Rather it gives to him who labors the right by every legitimate means to protect the fruits of his labor and secure the enjoyment of them to himself. 'Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restriction that which a man by industry, skill, and good judgment has built up, be denied.' "

We believe the trial court erred in sustaining the demurrer of the appellee to the appellant's amended complaint.

Judgment reversed with instructions to the trial court to overrule defendant's demurrer to the amended complaint.

NOTE.—Reported in 142 N. E. 2d 905.