INDIANA PACERS L. P., and Indiana Limited Partnership and S. A. M. Pacers, Inc., Appellants (Defendants Below),

v.

William Robert LEONARD and Nancy Leonard, Appellees (Plaintiffs Below),

and

Safeguard Business Systems, Inc., Appellees (Defendants Below).

No. 4–1281A207.

Court of Appeals of Indiana, Fourth District.

June 8, 1982.

Steven G. Cracraft, Salyers Eiteljorg & Cracraft, Indianapolis, Thomas G. Brenton, Brenton & Brenton, Danville, for appellants.

Kendall, Lowry & Wood, Danville, Campbell, Kyle & Profitt, Noblesville, for appellees.

MILLER, Presiding Judge.

Defendant-Appellants Indiana Pacers and S.A.M. Pacers Inc. (Pacers) are appealing the grant of a preliminary injunction in favor of their former employees, plaintiff-appellees William Robert Leonard and his wife, Nancy, which order required the Pacers to refrain from demanding that Leonard return to work for the Pacers as general manager, and further required the Pacers to compensate Leonard pursuant to his employment contract, pending the trial court's resolution of the Leonards' action at law for declaratory judgment and damages under the contract. Because the record reveals the Leonards' legal remedy (if appropriate) would adequately compensate them for their injuries, and thus they would suffer no irreparable harm in the absence of an injunction, we reverse.

The basic, essentially unchallenged facts of the underlying dispute may be simply stated: On October 26, 1979, Leonard and the Pacers entered into a contract of employment whereby Leonard was to serve as both head coach and general manager of the Indiana Pacers for a term of five (5) years commencing July 1, 1979 and ending June 30, 1984. Leonard's wife, Nancy, was employed as assistant general manager pursuant to the same contract. Leonard remained as head coach and general manager until June 3, 1980, when he was relieved of his duties by Sam Nassi, president of S.A.M. Pacers, Inc. Thereafter, the Pacers continued to pay Leonard his salary, and in this regard we note the employment contract provided, *inter alia*:

"7. Compensation and Other Benefits....

a. Leonard shall receive his salary, payable in equal semi-monthly installments, as follows:

. . . . .

7. So long as Leonard complies with the terms and provisions of this Agreement and except as provided in paragraph 10 herein, Leonard's right to receive his portion of these sums is not subject in any way to the following:

a. Should Leonard be released of his duties as head coach or general manager; ....

9. Termination. . . .

. . . . .

b. IPLP shall also have the right to relieve Leonard of his duties as Head Coach or manager during the term of this contract; and to replace him with a different Head Coach or General Manager, but, in such event, IPLP agrees to pay to Leonard the salary and other compensation set forth in Paragraphs 7 and 8 hereof for the balance of the term of this contract.

10. No Other Employment. Leonard agrees that so long as IPLP performs its duties and obligations under the terms of this contract, Leonard will not perform the duties of either head coach or general manager for any other basketball club during the term of this contract, without the express prior written consent of IPLP, unless Leonard, in writing, shall release IPLP from all obligations hereunder, in which event Leonard shall be free to contract as coach or general manager for any other basketball clubs."

In July of 1981, however, Leonard was contacted by the Pacers with regard to returning to that organization. By letter dated August 3, 1981, the Pacers made demand upon Leonard to re-assume the position of general manager, requiring him to devote his full-time to the position. (The letter also noted that Nancy Leonard would not be permitted to return to her employment.) At that time, which was approximately one year after Leonard's duties with the Pacers

had been terminated, he was engaged in employment activities with Bobby Leonard Enterprises, including work as a manufacturer's representative which required him to be "on the road" several days a week. Leonard was ultimately given until August 31 to accept the Pacers' demand.

Upon receiving the August 3 letter, Leonard and his wife filed their verified complaint on August 28, 1981 for an injunction, declaratory judgment and damages for breach of contract, alleging "[t]he damages to Mr. Leonard which will be caused by any continuation of the demands by Indiana Pacers L.P. and S.A.M. Pacers, Inc. that Mr. Leonard report to the Pacer office for full-time responsibilities are irreparable, and Mr. Leonard has no adequate remedy at law," and that Nancy Leonard had been wrongfully discharged by the Pacers.

After a hearing at which the trial court heard the above evidence,[1] it entered findings of fact upon its own motion,[2] determining, *inter alia*, "[t]here is a substantial likelihood of irreparable injury to be done to Leonard if he should attempt to comply with the letter of August 3, 1981," and that "[t]he damages to Mr. Leonard which will be caused by any continuation of the demands by IPLP and S.A.M. Pacers ... are irreparable, and Mr. Leonard has no adequate remedy at law." The Court also "found" "[t]he Defendants in this case cannot by their unilateral action through their letter of August 3, 1981, put the peril of being in breach of a contract that has yet to be interpreted." Thereupon, the trial court superseded an earlier temporary restraining order with the following preliminary injunction order:

"IT IS THEREFORE, ORDERED BY THIS COURT that until a trial of this action on the merits and until further order of this Court, the Defendants, IPLP and S.A.M. Pacers, Inc., and their agents, servants, employees, attorneys, and all other persons in active concert or participation with IPLP and S.A.M. Pacers, Inc. who receive notice of this order, are hereby enjoined from (a) demanding that Leonard report to the Pacer office for new or renewed responsibilities; (b) taking any action, or omission to perform any action otherwise required which would tend to interfere with Leonard's contractual arrangements or prospective relationships . of manufacturer's representative or salesman; and (c) failing to continue to maintain the status quo by honoring and performing all obligations under Leonard's Contract as such obligations were being performed by Defendants on July 1, 1981.

IT IS FURTHER ORDERED that the security previously posted by William Robert Leonard shall remain in effect, until further consideration by the Court upon motions by any party, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined as a result of this order.

IT IS FURTHER ORDERED that the Clerk of this Court shall forthwith cause a copy of this Preliminary Injunction to be served upon attorneys for the Defendants IPLP and S.A.M. Pacers, Inc.

ORDERED the 7th day of December, 1981 at 8:24 o'clock A.M.

### DECISION

■ It is well-established in this jurisdiction that a grant or denial of a preliminary injunction rests within the equitable discretion of the trial court, and will not be disturbed unless the court's order is clearly

---

1. The parties have disputed whether the contents of a published deposition of Nassi were properly introduced into evidence at such hearing, although neither party has suggested what light, if any, the deposition may shed on the issues of the instant appeal. We note, in any event, that contrary to the Leonard's assertion the deposition in its entirety was "accepted into evidence," the record does not disclose such a ruling by the trial court, although the Leonards did move to introduce the deposition.

2. Ind.Rules of Procedure, Trial Rule 65(D) provides, in this respect, "[e]very order granting temporary injunction and every restraining order shall include or be accompanied by findings as required by Rule 52.

**318**

erroneous or the result of an improvident exercise of judicial discretion. *Wells v. Auberry*, (1982) Ind.App., 429 N.E.2d 679. Nevertheless, "[w]hile an application for preliminary injunction is addressed to the Court's discretion, the power to issue such an interlocutory injunction should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor.'" *Id.* at 682, *quoting Indiana State Employees Association, Inc. v. Negley*, (S.D.Ind.1973) 357 F.Supp. 38, 40. It is axiomatic that injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. *Eaton Corp. v. Appliance Valves Corp.*, (N.D.Ind.1981) 526 F.Supp. 1172, 1173.

Discretion to grant or deny preliminary injunctive relief is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has not demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Indiana State Department of Welfare v. Stagner*, (1980) Ind.App., 410 N.E.2d 1348.

In the instant case, the Pacers contend the preliminary injunction in favor of the Leonards was improperly awarded because the Leonards have an adequate remedy at law under their employment contract and, in addition, have failed to show any irreparable harm from the actions taken by the Pacers. We agree.

Initially, it should be observed the trial court in essence ordered both prohibitive and mandatory relief by requiring the Pacers to refrain from making further demand on Leonard to return to employment, and by ordering the Pacers to continue compensating Leonard. *See* 42 Am.Jur.2d *In-junctions* § 17 at 748 (1969), where it is stated "[w]hen an injunction merely grants preventive relief it is prohibitive, but when it directly or indirectly grants affirmative relief it is mandatory." In this regard it has been observed that relief by mandatory injunction is not regarded with judicial favor and is used only with caution and in cases of great necessity." 42 Am.Jur.2d *Injunctions* § 20 at 751 (1969).

In support of its order, the court merely determined, somewhat confusingly, that "[t]here is a substantial likelihood of irreparable injury to be done to Leonard *if he should attempt to comply with the letter of August 3, 1981*," (emphasis added), and that the damages occasioned by the Pacers' demands under their interpretation of the contract would be "irreparable." As the findings themselves suggest, however, it is apparent the Pacers' mere *assertion* of their purported right to demand Leonard's return to work would not occasion irreparable injury, and nothing in the record suggests otherwise. Although such demand may require Leonard to make what he believes to be a difficult choice regarding his purported obligation to return to the Pacers, as noted above an injunction will not issue merely to allay the fears and apprehensions or to soothe the anxieties of the parties. *Eaton Corp. v. Appliance Valve Corp., supra.* Moreover, although an injunction may be granted to restrain malicious or vexatious acts—an issue not suggested by the pleadings, evidence, or findings in the instant case—one may not be enjoined from doing lawful acts (a mere demand in the instant case) to protect and enforce his rights of property or of person. *See* 42 Am.Jur.2d *Injunctions* § 32 at 769 (1969). The fact that Leonard may suffer injury if he "attempt[s] to comply" with a demand is clearly no basis for ordering an injunction against the Pacers.

Similarly, it is also apparent Leonard's loss of income, in the event the Pacers ceased giving him compensation, under their reading of the contract, would not occasion irreparable injury which could not be remedied by an action at law for dam-

ages. "The universal test of the jurisdiction of a court of equity to issue injunctions is the absence of a legal or other remedy by which the complainant might obtain the full relief to which the facts and circumstances entitle him, and this is likewise the test of its power to restrain breaches of contracts." 42 Am.Jur.2d § 93 at 842 (1969). Except in rare cases, a preliminary mandatory injunction should not be issued where it would have the effect of granting to the complainant all the relief that he could obtain upon a final hearing. 42 Am.Jur.2d § 16 at 748 (1969). Thus, this Court has recently held the salary differential occasioned by an allegedly improper demotion of a sheriff's department employee from major to sergeant did not warrant the granting of a preliminary injunction, since "reinstatement in rank and an award of back pay, may be just as effectively rendered after a determination is made on the merits as it would be if made preliminarily." *Wells v. Auberry, supra* at 684. *See also Indiana State Employees v. Negley, supra; Van Arsdel v. Texas A & M University*, (5th Cir. 1980) 628 F.2d 344. In the instant case, it is equally apparent the Leonards would be adequately compensated by virtue of an action at law for damages in the event the Pacers breached the employment contract.

Accordingly, we conclude the trial court's grant of a preliminary injunction against the Pacers should be reversed.

YOUNG, J., concurs.

CONOVER, J., concurs in result.